UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TAMARA JO SKINNER,                                      Case No. 2:23-cv-00155

                       Plaintiff,                       Hon. Robert J. Jonker
                                                        U.S. District Judge
v.

COMMISSIONER OF
SOCIAL SECURITY,

                       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

On January 20, 2021, Plaintiff — Tamara Jo Skinner — filed an application

for Title II Social Security Disability Insurance Benefits (DIB), asserting a disability

onset date of January 20, 2020.  (ECF No. 11, PageID.877.)  Skinner asserted that

she has the following severe impairments: fibromyalgia, herniated discs,

degenerative disc disease, melanoma in remission, anxiety, post-traumatic stress

disorder (PTSD), chronic pain, chronic obstructive pulmonary disease (COPD),

bilateral lower extremity edema, and "dead butt syndrome."  (ECF No. 5-3,

PageID.90.)  The Social Security Administration (SSA) denied Skinner's application

on August 24, 2021.  (ECF No. 5-4, PageID.114.)  On September 3, 2021, Skinner

requested reconsideration, which the SSA denied on January 26, 2022.  (*Id.*,

PageID.119.)   Skinner then requested an administrative hearing before an

Administrative Law Judge (ALJ).  (ECF No. 13, PageID.894.)  ALJ Peter Kafkas

conducted this hearing on July 1, 2022.  (ECF No.11, PageID.878.)  On August 31, 2022, the ALJ issued a decision ruling that Skinner was not under disability from the alleged onset date through the date of the decision.  (ECF No.5-2, PageID.50.)

Skinner now appeals Judge Kafkas's decision.  (ECF No.1.)  She argues that the ALJ legally erred by failing to evaluate the medical opinion evidence in accordance with the governing rules and regulations, and by failing to reconcile the inconsistency between his findings.  (ECF No.11, PageID.884.)  More specifically, Skinner argues that the ALJ erred in evaluating the medical opinions of psychologists Jacobson, MA, LLP, and Dr. Cappone, Ph.D., LP, and the prior administrative medical findings of Dr. Chiambretti, DO, and Dr. Abbasi, MD.  (*Id.*, PageID.886-891.) Skinner alleges that the ALJ did not articulate the supportability and consistency of each medical opinion.  (*Id.*, PageID.885.)

It is respectfully recommended that the Court affirm the decision of the ALJ because substantial evidence exists in the record to support the ALJ's decision that Skinner is not disabled as defined by the SSA.  Contrary to Skinner's assertion, the ALJ properly evaluated the medical opinions and prior administrative medical findings.  The ALJ evaluated the supportability of the opinions by psychologists Jacobson and Dr. Cappone by addressing their methodology.  Further, he explained that these findings were consistent with other medical opinions.  Additionally, the ALJ did not err by finding Drs. Chiambretti and Abbasi's opinions to be persuasive. Although they opined that Skinner's fibromyalgia and hemolytic anemia were severe impairments, an ALJ is not obligated to accept those opinions when he gives sufficient

reasoning for not doing so.  Further, the ALJ's reliance on the opinions of Drs. Chiambretti and Abbasi, despite the time gap between those findings and the date of the administrative hearing, was not an error.  The ALJ considered new relevant evidence in conjunction with Drs. Chiambretti and Abbasi's reports in making his ultimate determination that the reports were persuasive.

## II.    Skinner SSA and Medical Report History

For the purposes of the rest of this R&R, it is helpful to note the key dates of the Skinner's history with the SSA, and the dates of her visits with medical professionals.  Skinner alleges that her disability began on January 20, 2020.  (ECF No. 11, PageID.877.)  On January 20, 2021, Skinner filed an application for Title II Social Security Disability Insurance benefits.  (*Id*.)  Skinner's application was initially denied on August 24, 2021.  (*Id*.)  Skinner requested reconsideration, which was denied on January 26, 2022.  (*Id*.)  The ALJ held a hearing on July 1, 2022, and then ultimately issued an unfavorable decision on August 31, 2022.  (*Id*., PageID.878.)  Skinner then requested a review of the ALJ's decision, which was denied on June 29, 2023.  (*Id*.)

The following table lists some of the medical officials that Skinner saw during this process.  In addition, the table also details where the medical report may be found in the docket as well as the ALJ's finding as to its persuasiveness.

| Name | Date | SSA exh. | Purpose/event | ECF | ALJ's finding |
|---|---|---|---|---|---|
| Jacobson & Cappone | 7/15/21 | 12F | Psychological, initial | 5-10, PageID.707 | Partially persuasive |
| Csokasy | 7/21/21 | 2A | Psychological, initial | 5-3, PageID.90 | persuasive |

| Name | Date | SSA exh. | Purpose/event | ECF | ALJ's finding |
|------|------|----------|---------------|-----|---------------|
| Chiambretti | 8/24/21 | 2A | Physical, initial | 5-3, PageID.90 | persuasive |
| DeLoach | 1/21/22 | 4A | Psychological, reconsideration | 5-3, PageID.99 | persuasive |
| Abassi | 1/23/22 | 4A | Physical, reconsideration | 5-3, PageID.99 | persuasive |

### III.    ALJ's Decision

ALJ Kafka's decision is the focus of this appeal. In this decision, ALJ Kafka correctly outlined the five-step sequential process used to determine whether an individual is disabled or not.  (ECF No.5-2, PageID.38-39.)

Generally, the ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At step one, the ALJ determines whether the claimant is still engaging in substantial gainful activity.  20 C.F.R. § 404.1520(b).  At step two, the ALJ determines whether the claimant's impairments are considered "severe."  20 C.F.R. § 404.1520(c).  At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. Part 404, Subpart P, App'x 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  Before proceeding to step four, the ALJ determines the claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  At step four, the ALJ determines whether the claimant has the RFC to still perform past relevant work.  20 C.F.R. § 404.1520(f).  At step five, after considering the claimant's RFC, age, education, and work experience, the ALJ determines whether the claimant is able to

do any other work.  20 C.F.R. § 404.1520(g).  In order to support a finding that an individual is not disabled at this step, the ALJ must determine there are significant numbers of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1512, 404.1560(c).  If the ALJ determines the claimant is not disabled under any step, the analysis ceases and the claimant is declared not disabled.  20 C.F.R § 404.1520(a)(4).

At step one, the ALJ found that Skinner had not engaged in substantial gainful activity since January 20, 2020, the alleged onset date.  (*Id.*, PageID.40.)

At step two, the ALJ found that Skinner had the following severe impairments: degenerative disc disease, bilateral hip femoroacetabular impingement, dysplasia, labral tears and bursitis, COPD, essential hypertension, peripheral neuropathy, and obesity.  (*Id.*)  The ALJ considered Skinner's fibromyalgia and determined that Skinner did not give sufficient evidence at the hearing level to establish fibromyalgia as a medically determinable impairment.  (*Id.*, PageID.41.)  Additionally, the ALJ noted that Skinner's anxiety did not cause more than minimal limitation in her ability to perform basic mental work activities.  (*Id.*)

The ALJ also concluded that Skinner had only mild limitations in each of the functional areas known as the "paragraph B" criteria.  (*Id.*, PageID.41-42.)

At step three, the ALJ found that Skinner did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, App'x 1.  (*Id.*, PageID.43.)  The ALJ noted that no treating or examining physician mentioned any findings equivalent in severity to any

listed impairment, nor are such findings indicated or suggested by the medical record. (*Id.*)  Additionally, the ALJ determined that although claimant's impairments are severe, they do not meet or equal any of the listings set forth in the criteria found in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  (*Id.*)

Before going on to step four, the ALJ made findings regarding Skinner's RFC. The ALJ determined that Skinner had the necessary RFC to perform light work defined in 20 C.F.R. § 1567(b).  (*Id.*)  The ALJ, however, included some exertional limitations.  Specifically, the ALJ concluded that Skinner retains the ability to perform work at light exertion levels except that she can frequently climb ramps and stairs; can occasionally climb ladders, ropes and scaffolds; and can frequently kneel and crawl.  (*Id.*, PageID.48.)

In determining Skinner's RFC, the ALJ considered Skinner's description of her symptoms.  First, the ALJ considered if Skinner's impairments could reasonably be expected to produce Skinner's pain or other symptoms.  Second, the ALJ considered the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  (*Id.*, PageID.43.)

The ALJ outlined Skinner's statements from her disability application, her function report, her testimony, and her daughter's third-party function report.  (*Id.*, PageID.43-44.)  After consideration of the evidence, the ALJ found that Skinner's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (*Id.*, PageID.44.)  However, the ALJ found that Skinner and her

daughter's statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with medical evidence and other evidence in the record. (*Id.*) The ALJ based this conclusion on physical reports made after the alleged onset date that are consistent with the ability to carry out light work. (*Id.*, PageID.48.) Further, these reports detailed physical examinations that were within "normal" limits. (*Id.*)

The ALJ noted Skinner's assertions that she was limited in lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, and concentration. (*Id.*, PageID.44.) Further, the ALJ noted the consistency of these assertions with her daughter's function report that listed back and hip injuries which caused difficulty walking for Skinner without a cane or extreme pain. (*Id.*) Additionally, Skinner's testimony at the hearing was consistent with these allegations, with Skinner testifying that her symptoms caused substantial limitations on her physical and mental function. (*Id.*)

The ALJ then considered records from Skinner's primary care provider, Dr. Hartman. Skinner visited Dr. Hartman before the alleged onset date, complaining of lower back pain and fibromyalgia. The ALJ noted that on June 20, 2019, Dr. Hartman reported that Skinner's examination revealed normal spinal curvature, no deformity, intact strength and sensation, and normal and symmetric reflexes. (*Id.*) On February 5, 2020, shortly after Skinner's alleged disability onset date, Dr. Hartman reported that Skinner appeared to be alert and oriented, with no focal neurological deficits, and her gait was within normal limits. (*Id.*) Dr. Hartman

reported similar physical examination findings on August 12, 2020 and October 2, 2020. (*Id.*, PageID.45.) Dr. Hartman reported on May 4, 2021, Skinner's gait was within normal limits. (*Id.*) In November of 2021, Dr. Hartman produced a report that Skinner had no difficulty concentrating, remembering, or making decisions, walking or climbing stairs, dressing or bathing, or doing errands alone. (*Id.*, PageID.46.) Dr. Hartman opined that Skinner is capable of self-care but unable to carry out any work activities. (ECF No. 5-10, PageID.686, 739.) The ALJ did not find this opinion persuasive, noting that the physical examinations did not include function by function evaluations of Skinner's physical abilities. (ECF No. 5-2, PageID.48.)

The ALJ considered Skinner's visit to Dr. Kerns on April 6, 2021. (*Id.*, PageID.45.) Dr. Kerns reported that his examination of Skinner revealed she walked with an antalgic gait. (*Id.*) Dr. Kerns examined hip x-rays and MRIs, which showed some signs of cartilage thinning and a hypertrophic labrum with an associated labrum tear. (*Id.*) Dr. Kerns ultimately reported impressions of bilateral femoroacetabular impingement and bilateral hip dysplasia. However, Dr. Kerns did not recommend surgical intervention. Skinner did not return to Dr. Kerns for hip pain after this single visit. (*Id.*)

The ALJ considered Dr. Gowda's reports from June 4, 2021, July 17, 2021, and August 5, 2021. (*Id.*) These reports noted that Skinner did not have acute distress, appeared alert and oriented, her lungs were clear to auscultation bilaterally with no dullness to percussion, no focal motor deficit, and a normal affect with appropriate

8

responses.  (*Id.*)  The August 5, 2021 report noted that Skinner's testing was consistent with a diagnosis of monoclonal gammopathy, but no treatment was indicated.  (*Id.*)  In the reports, Dr. Gowda indicated that Skinner's Eastern Cooperative Oncology Group (ECOG) performance status score was 2, indicating that Skinner is capable of self-care, but cannot carry out work activities.  (*Id.*)  The ALJ ultimately considered the physical examinations to be persuasive, but the ECOG performance score to be unpersuasive.  (*Id.*, PageID.48.)

The ALJ considered the reports of Dr. Mohamed.  Dr. Mohamed reported that Skinner's lungs were clear to auscultation bilaterally and her breathing was symmetric, and she had no edema in her lower extremities.  (*Id.*, PageID.46.)

During a January 6, 2022 visit, Dr. Sinclair determined that Skinner was awake, alert, and oriented, had normal memory and fund of knowledge, had fluent speech, and her strength was 5/5 throughout, and had narrow based gait.  (*Id.*)   Dr. Sinclar ordered an MRI on Skinner's cervical spine on January 25, 2022, an MRI on her thoracic spine on April 9, 2022, and an MRI on her lumbar spine on April 16, 2022.  (*Id.*)  In addition, Dr. Sinclar conducted nerve conduction velocity (NCV) and electromyography (EMG) testing on March 18, 2022.  The cervical MRI revealed a disc osteophyte complex with mild to moderate central stenosis and mild bilateral foraminal encroachment at C5-6, and minimal bulging of the disc with mild bilateral foraminal encroachment at C6-7, without cord compression or abnormal cord signal at any level, and no acute bony abnormality.  (*Id.*)  The NCV/EMG testing was reported as mildly abnormal.  (*Id.*)  The thoracic spine MRI showed a left paracentral

disc bulge at T9-10 effacing the thecal sac with mild neural foraminal narrowing and an unremarkable spinal cord signal.  (*Id.*)  The lumbar MRI showed a small radial tear and a small to moderate broad-based disc bulge, mild neural foraminal narrowing, left greater than right and no spinal stenosis at L4-54, and a small broad based disc bulge with mild neural foraminal narrowing but no spinal stenosis at L5-S1.  (*Id.*)  The ALJ considered this report as evincing physical examinations within normal limits.  (*Id.*, PageID.48.)

The ALJ considered Skinner's visits to Dr. Warren, a pain management physician.  On April 26, 2022, Dr. Warren reported that his respiratory examination revealed no audible wheezing and good inspiratory effort.  (*Id.*, PageID.46.) Musculoskeletal examination revealed tenderness to palpation of the bilateral greater trochanters of the femurs and intact sensation to light touch throughout the bilateral lower extremities.  (*Id.*)  Per the report, Dr. Warren recommended bilateral grater trochanteric corticosteroid injections.  (*Id.*, PageID.47.)  The April 26, 2022 examination is the most recent report of physical examination findings in the record, which is consistent with previous physical examinations.  (*Id.*)

The ALJ next considered Skinner's hypertension and obesity.  The ALJ considered medical records to show that Skinner's blood pressure is poorly controlled, with some reports of normal activity, but other reports of it being elevated.  (*Id.*)  The hypertension experienced by Skinner is consistent with RFC of a range of light work. (*Id.*)  The medical records note that Skinner is obese with reports of high body mass

indexes (BMI).  The RFC recommendation adopted by the ALJ considered Skinner's obesity.  (*Id.*)

Next, the ALJ considered the opinions of state agency psychological consultants, Dr. Csokasy and Dr. DeLoach.  (*Id.*)  Both opined that Skinner exhibited no severe mental impairments.  (*Id.*)  The ALJ found these opinions persuasive due to the consistency between them, detailed written support, and consistency with mental examination findings of Skinner's treating physicians.[1]  (*Id.*)

In the same paragraph, the ALJ discussed the opinions of psychologists Jacobson and Dr. Cappone,[2] finding these opinions to be partially persuasive.  (*Id.*)  Psychologists Jacobson and Dr. Cappone opined that Skinner presented cognitive skills that fell within the average range, and therefore was capable of carrying out job tasks that were simple, repetitive, and routine in nature.  (*Id.*)  Further, they opined that the severity of Skinner's symptoms would not impede or thwart her ability to carry out her cognitive potential or job tasks consistent with her employment history.  (*Id.*)  The ALJ found that the portion of their opinion indicating that Skinner could perform the requirements of her past employment was speculative and not persuasive.  (*Id.*)

---

[1]     The ALJ addressed these reports in the same paragraph, thus creating the impression that they were done in concert with each other.  But Csokasy signed his report on July 21, 2021 (ECF No. 5-3, PageID.94), a month before the initial denial of Skinner's application, while DeLoach's report was issued on Jan. 21, 2022 (*id.*, PageID.103), just prior to the denial upon reconsideration.

[2]     As noted above, this evaluation was conducted in July 2021, the month before Skinner's initial evaluation.  *See supra*, table at pages 3-4; ECF No. 5-10, PageID.707 (psychological medical report by Jacobson and Cappone).

State agency medical consultants, Dr. Chiambretti and Dr. Abbasi opined that the claimant retained the ability to perform work at a light exertion level. (*Id.*, PageID.48.)  The ALJ found their opinions to be persuasive because of the consistency between them, their detailed written explanations grounded in evidence for the opinions, and consistency with medical evidence obtained at the hearing level.[3] (*Id.*)

The ALJ found that Skinner would be able to perform work at a light exertion level.  The ALJ supported his finding of Skinner's RFC through medical findings and treatment in the record.  The ALJ concluded that Skinner had no limitation, impairment, or combination of impairments at a disabling level of severity.  The ALJ ultimately found that Skinner had a greater capacity to work than she alleged. (*Id.*)

At step four, the ALJ determined that Skinner was unable to perform any past relevant work.  At the hearing, a vocational expert testified that given the RFC detailed above, Skinner would be incapable of performing her past relevant work. (*Id.*)

At step five, the ALJ determined that after considering Skinner's RFC, age, education, and work experience, there were jobs within the national economy that Skinner could perform. (*Id.*, PageID.49.)  Skinner had the functional capacity to perform the full range of light work, indicating that she is "not disabled." (*Id.*, PageID.48-49.)  The ALJ found that Skinner was 46 years of age on the alleged

---

[3]    The ALJ also addressed these reports in the same paragraph, again creating the impression that they were done in concert with each other.  But Chiambretti signed his report on Aug. 24, 2021 (ECF No. 5-3, PageID.97), the same day as the initial denial of Skinner's application, while Abassi's report was issued on Jan. 23, 2022 (*id.*, PageID.105), just prior to the denial upon reconsideration.

disability onset date, which is defined as a "younger individual."  (*Id.*, PageID.48.)
Skinner had at least a high school education.  (*Id.*)  A vocational expert determined
that these factors would allow Skinner to perform the requirements of occupations
such as: Router (DOT 222.587-038), with 25,000 jobs nationwide; Mail Clerk (DOT
209.687-026), with 11,000 jobs nationwide; and Routing Clerk (DOT 222.687-022),
117,000 jobs nationwide.  (*Id.*, PageID.49.)  Based on these available jobs, the ALJ
concluded that Skinner was capable of doing jobs that existed in significant numbers
in the national economy, and therefore was not disabled.  (*Id.*, PageID.50.)

### IV.    Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ
applied the correct legal standards," and (2) "whether the findings of the ALJ are
supported by substantial evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x
418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405
(6th Cir. 2009)); 42 U.S.C. § 405(g).  The Court may not conduct a *de novo* review of
the case, resolve evidentiary conflicts, or decide questions of credibility.  *Garner v.
Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged
with finding the facts relevant to an application for disability benefits, and the
Commissioner's findings are conclusive provided they are supported by substantial
evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but
"such relevant evidence that a reasonable mind might accept as adequate to support
a conclusion."  *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir.

1991).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole, and take into account whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

## V.    Analysis

Skinner argues that the ALJ erred by failing to evaluate properly the opinions of psychologists Jacobson and Dr. Cappone, and the prior administrative findings of Drs. Chiambretti and Abbasi.  (ECF No. 11, PageID.886, 888.)   An ALJ must articulate the persuasiveness of a medical opinion.  20 C.F.R. § 404.1520c(b).  An ALJ must base his conclusions regarding the persuasiveness of a medical opinion on the following factors: (1) supportability of the relevant objective evidence and supporting explanations, (2) consistency of the opinions with medical evidence or nonmedical evidence in the record, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1520c(a) and (c).  The most important factors are the supportability and consistency of the medical opinions.  20 C.F.R. § 404.1520c(b)(2).  When a source provides one or more

medical opinions or prior administrative medical findings, an ALJ must consider those opinions or findings together using the factors listed in paragraph (c). 20 C.F.R. § 404.1520c(a).

The ALJ is required to articulate how he or she considered the medical opinions and prior administrative medical findings and explain the supportability and consistency factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ will articulate the persuasiveness of "all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b) and § 416.920c(b).

As noted above, the ALJ included his discussion of the persuasiveness of the opinions of Csokasy and DeLoach as well as Jacobson and Cappone in the same paragraph. That paragraph is shown below.

> The State agency psychological consultants, Jerry Csokasy, Ph.D and Joseph DeLoach, Ph.D, both opined that the claimant had no severe mental impairment (Exhibit 2A and 4A). Likewise, in the report from the consultative psychological examination, Mr. Jacobson and Dr. Cappone opined that the claimant presented with cognitive skills that fell within the average range, and therefore was thought to be capable of carrying out job tasks that were simple, repetitive, and routine in nature, and that it was not thought that the severity of these symptoms would impede or thwart her ability to carry out her cognitive potential or job tasks consistent with her employment history (Exhibit 12F). The opinions of Dr. Csokasy and Dr. Deloach are persuasive because they are consistent with each other, they are supported by detailed written explanations, and they are consistent with the mental examination findings consistently reported by the claimant's treating physicians, including Dr. Hartman, Dr. Gowda, Dr. Sinclair, and Dr. Mohamed (Exhibits 1F, 5F, 9F, 10F, 13F, 14F, and 15F). The opinions of Mr. Jacobson and Dr. Cappone are partially persuasive to the extent that they are consistent with a finding of no severe mental impairment, but the portion of their opinion indicating that the claimant could perform the requirements of her past employment is speculative and not persuasive.

(ECF No. 5-2, PageID.47.)

In this paragraph, the ALJ referenced Exhibit 12F, which is included in this Court's docket at ECF No. 5-10, PageID.707-15.  The opinions of psychologists Jacobson and Dr. Cappone, which are set forth in Exhibit 12F, are shown below.

VII.    **MEDICAL SOURCE STATEMENT**

In this writer's opinion, based upon the current mental status examination, this individual presents with cognitive skills that fall within the average range, and therefore thought to be capable of carrying out job tasks that are simple, repetitive, and routine in nature. She does present with mild to moderate symptoms of anxiety, but it is not thought the severity of these symptoms would impede or thwart her ability to carry out her cognitive potential or job tasks consistent with her employment history.

(ECF No.5-10, PageID.714.)

As noted above, the ALJ concluded that these opinions were partially persuasive.  But Skinner argues that the ALJ failed to evaluate the supportability and consistency of those opinions.  (ECF No. 11, PageID.885-886.)  More specifically, Skinner argues that the ALJ gave "neither an analysis of the degree to which the opinion was supported by the source's own findings and explanations, nor an analysis of the degree to which the opinion is consistent with the evidence proffered by other medical and nonmedical sources." (*Id.*)  However, the ALJ made this determination earlier in his written decision:

normal memory and fund of knowledge (Exhibit 15F). In the report from the consultative psychological examination completed on July 15, 2021, psychologist Bruce Jacobson, MA, LLP and licensed psychologist Margaret Cappone, Ph.D, LP reported that the claimant was able to repeat 6 numbers forward and 3 numbers backward, could recall the names of 3 items after 3 minutes, and responded correctly to questions testing her past memory (Exhibit 12F).   In her function reports, the claimant reported that she was able to complete activities of daily living such as leaving her home independently, driving a car, shopping in stores, and managing her finances (Exhibits 4E and 7E).  At the hearing, the undersigned observed that the claimant paid good attention, was well focused, understood the questions, and gave relevant and detailed answers.  The claimant was able to give detailed responses to questions regarding the history of her employment and medical treatment. This finding is also consistent with the opinions of the two independent State agency psychological consultants, who agreed that the claimant had a mild limitation in her ability to understand, remember, and apply information (Exhibits 2A and 4A).

(ECF No. 5-2, PageID.41.)  Here, the ALJ explained his rationale and support for determining the persuasiveness of the opinions of Jacobson and Cappone.  The ALJ made determinations on the supportability of the opinion by articulating the basis for the opinion.  Further, the ALJ found that the opinion was consistent with later evaluations done by Csokasy and DeLoach.  (ECF No. 5-3, PageID.93-94, 103).  Likewise, the ALJ evaluated the persuasiveness of Csokasy and DeLoach later in his decision.  (ECF No. 5-2, PageID.47.)

In the decision, the ALJ addressed the supportability and consistency of each medical opinion.  A Court must accept an ALJ's factual findings so long as they are supported by substantial evidence on the record considered as a *whole*.  *Jones Bros., Inc. v. Sec. of Labor, Mine Safety and Health Admin.*, 68 F.4th 289, 295 (6th Cir. 2023) (emphasis added).  Further, an ALJ's discussion of the supportability and consistency of an opinion only needs to be detailed enough for a reviewing Court to follow the ALJ's rationale for his decision.  *Zanoubia E. v. Comm'r of Soc. Sec.*, No. 1:23-cv-11276, 2024 WL 1097149, at *13 (E.D. Mich. Mar. 13, 2024).

Second, Skinner argues that the ALJ erred in his evaluation of the opinions offered by Drs. Chiambretti and Abbasi.  (ECF No. 11, PageID.888.)  Skinner argues that the ALJ contradicted these opinions because the ALJ did not find fibromyalgia and hemolytic anemia as nonsevere impairments.  (*Id.*)  In contrast, Chiambretti and Abbasi found that Skinner's fibromyalgia and anemia were severe impairments.  (ECF No. 5-3, PageID.93, 102.)   Nevertheless, the ALJ considered the medical opinions to be persuasive due to their detailed written support and consistency with other physical examinations.  (ECF No. 5-2, PageID.48.)  Skinner argues that the ALJ erred because he did not acknowledge nor reconcile these portions of the opinions with his conclusions.  (ECF No. 11, PageID.888.)

Yet, an ALJ is not required to adopt all the findings of a medical opinion that he finds persuasive.  *Soto v. Comm'r of Soc. Sec.*, No. 1:22-CV-855, 2023 WL 7740378, at *5 (W.D. Mich. Oct. 31, 2023).  Although an ALJ may find an opinion persuasive, the ALJ is not bound to adopt all the proposed limitations.  *Id.*  Even though the ALJ did determine that Drs. Chiambretti and Abbasi gave persuasive medical opinions, he declined to adopt their findings regarding Skinner's alleged fibromyalgia and anemia.  The ALJ found that these conditions were not severe for the reasons shown below.

In addition to the severe impairments identified above, the medical record refers to potential diagnoses of monoclonal gammopathy, fibromyalgia, anemia, and secondary polycythemia and leukocytosis. As for these impairments, and all other impairments alleged and found in the record, other than those enumerated above, the undersigned finds that they are nonsevere or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to result in more than minimal work-related restriction for a continuous period of at least 12 months, are not expected to result in death, and/or have not been properly diagnosed by an acceptable medical source as defined in the regulations (20 CFR 404.1509, 404.1513(a), and 404.1522(a)).

(ECF No. 5-2, PageID.40.)  Here, the ALJ gives his specific reasons for why he did not view Skinner's fibromyalgia and anemia as severe impairments.  Once again, a Court must accept an ALJ's factual findings so long as there is substantial evidence given by the ALJ to support the decision.  Further, the Court must consider the whole record when making its determination if the ALJ considered substantial evidence. *Jones Bros., Inc*, 68 F.4th 289, 295 (6th Cir. 2023)

Further, a claimant must do more than point out a perceived error.  A ruling may not be set aside when a perceived error is harmless.  *Luukkonen v. Comm'r of Soc. Sec.*, 653 Fed. App'x 393, 399 (6th Cir. 2016) (finding that an ALJ failing to explicitly apply diagnostic criteria to a fibromyalgia determination was a harmless error because applying the criteria would not have changed the outcome).  The ALJ explicitly mentioned that, despite not finding all impairments to be severe, the ALJ still considered them when assessing Skinner's RFC.  (ECF No. 5-2, PageID.42.)  The designation of fibromyalgia and anemia as non-severe was not outcome determinative.  Furthermore, any medical opinion that determined Skinner's fibromyalgia and anemia to be severe came to a similar conclusion as the ALJ.  For example, Dr. Abbasi opined that Skinner's fibromyalgia was severe, yet indicated

that the totality of medical evidence supports Skinner's ability to engage in work activity indicated on the RFC.  (ECF No. 5-3, PageID.105.)

Finally, Skinner points out that the ALJ erred by relying on the opinions of Drs. Chiambretti and Abbasi which were made before the record was complete.  (ECF No. 11, PageID.888-891.)  More specifically, Skinner alleges that Drs. Chiambretti and Abbasi did not have access to objective diagnostic studies of record and therefore it is an error for the ALJ to rely on their opinions.  (*Id.*, PageID.889.)  In the opinion of the undersigned, the ALJ did not err.  Absent a clear showing that new evidence renders the prior opinion untenable, a gap between agency expert opinions and the hearing does not warrant a judicial remand.  *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009).  The ALJ did not consider Drs. Chiambretti and Abbasi's opinions in isolation; rather he considered them in conjunction with other medical opinions given by Drs. Hartman, Gowda, Sinclair, Warren, and Mohamed.  (ECF No. 5-2, PageID.48.)  He found Drs. Chiambretti and Abbasi to be persuasive, particularly because they were supported by later evidence.  (*Id.*)

## VI.    Recommendation

The undersigned respectfully recommends that the Court affirm the decision of the ALJ.  Contrary to Skinner's assertion, the ALJ properly went through the procedures in determining that Skinner was not disabled.  The ALJ evaluated the supportability of Mr. Jacobson and Dr. Cappone's opinions by addressing their methodology.  The ALJ did not err by finding Drs. Chiambretti and Abbasi's opinions to be persuasive.  Although their opinions attested that fibromyalgia and hemolytic

anemia were severe impairments, an ALJ is not obligated to accept those opinions when he gives sufficient reasoning for not doing so.  Further, the claimant has the burden of proving that any perceived error prejudiced the ALJ's decision, which was not done here.  Finally, the ALJ's reliance on the opinions of Drs. Chiambretti and Abbasi despite a gap between those findings and the hearing testimony was not error. The ALJ considered new relevant evidence in conjunction with Drs. Chiambretti and Abbasi's reports in making his ultimate determination that the reports were persuasive.  For the reasons above, the ALJ did not err when making his determination of Skinner's disability.

## NOTICE TO PARTIES

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  July 12, 2024                              /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE